UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| SAMANTHA L. SIMISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00081-AGF |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Samantha L. Simison was not disabled and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 or supplementary security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1385.  For the reasons set forth below, the decision of the Commissioner will be reversed, and the case remanded for further proceedings.

### Background

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Material Facts.  ECF No. 13-1.  Defendant has admitted all facts contained therein and has provided no supplementary facts.  ECF No. 16-1.  Plaintiff's statements provide a fair description of the record before the Court.  Specific facts will be

---

[1]    Martin J. O'Malley is now the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is substituted for Acting Commissioner Kilolo Kijakazi as the Defendant in this suit.

discussed as needed to address the Parties' arguments.

Plaintiff was born on July 28, 1989, and filed her applications for benefits on October 22, 2019.  She alleged disability beginning on December 5, 2018,[2] due to fibromyalgia, ankylosing spondylitis, depression, anxiety, insomnia, and dyslexia.  Tr. 264.  Plaintiff's application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A telephonic hearing was held on October 26, 2020.  Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing.  On August 25, 2021, a supplemental hearing was conducted at the request of the ALJ.  A VE and a medical expert, Dr. Joseph Carver, PhD, testified at the supplemental hearing.  By decision dated September 13, 2021, the ALJ found that Plaintiff had the severe impairments of bilateral sacroiliitis, ankylosing spondylitis, lumber and thoracic radiculopathy, narcolepsy, obstructive sleep apnea, obesity, depressive disorder, and generalized anxiety disorder.  Tr. 24.

The ALJ concluded that none of Plaintiff's impairments or combination of impairments met or medically equaled one of the deemed-disabling impairments listed in the Commissioner's regulations.  Tr. 24.  Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in the Commissioner's regulations,[3] except that:

---

[2]    In various documents in the record, Plaintiff indicates that her disability began on December 15, 2018, rather than December 5, 2018.

[3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting

2

> [Plaintiff] is limited to the frequent climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; frequent stooping, kneeling, crouching, and crawling; never working at unprotected heights; never operating hazardous machinery; performing simple, routine tasks; performing simple, work-related decisions; only occasional contact with co-workers and supervisors; only occasional superficial contact with the public; and only occasional changes in the routine work setting.

Tr. 28. In making these findings, the ALJ considered the opinion evidence of various medical professionals and providers, including those of Plaintiff's treating psychiatrist, Dr. David Goldman, DO, and Dr. Carver.

Next, the ALJ found that Plaintiff is unable to perform any past relevant work but could perform certain light jobs listed in the Dictionary of Occupational Titles ("DOT") (housekeeping cleaner, routing clerk, and folding machine operator), which the VE in Plaintiff's supplementary hearing testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Tr. 33–34. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

On November 5, 2021, Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 12–17. On September 22, 2022, the Appeals counsel denied Plaintiff's request for review. Tr. 1–3. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review. Plaintiff filed her Complaint with this Court on November 21, 2022. ECF

---

or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b).

3

No. 1.

Plaintiff argues that the Court should reverse the decision of the ALJ for two reasons: (1) the ALJ incorrectly analyzed Dr. Goldman's opinion evidence under 20 C.F.R. § 404.1520; and (2) the RFC constructed by the ALJ is not supported by the weight of the evidence.

Throughout her argument, Plaintiff places significant emphasis on Dr. Goldman's opinion regarding Plaintiff's mental limitations and her belief that the ALJ failed to properly credit this opinion.  She argues that the inconsistencies the ALJ relies on to discredit Dr. Goldman's mental limitations assessment are merely statements from the medical records in which Plaintiff expresses her aspirations to do certain activities but not definitive evidence that Plaintiff was performing those activities.  Plaintiff asserts that these are only small portions of the medical record and do not constitute sufficient contradictory medical evidence to undermine Dr. Goldman's assessment of Plaintiff's mental limitations.

Regarding her arguments for why the RFC is not supported by the weight of the evidence, Plaintiff claims that the ALJ incorrectly assessed the medical evidence to find that Plaintiff has the RFC for light work.  Plaintiff takes issue with the ALJ's crediting of indications in the medical records that Plaintiff had "normal gait and station" and "normal neurological signs."  ECF No. 13 at 19.  Plaintiff also claims that the ALJ failed to address the impact of Plaintiff's chronic fatigue on her daily activities and failed to discuss the VE's testimony regarding a hypothetical about missing significant work.  Finally, Plaintiff argues that the ALJ's RFC failed to discuss the effects of Plaintiff's

4

chronic fatigue and narcolepsy on Plaintiff's RFC.  ECF No. 13.

Defendant denies that the ALJ failed to assess Dr. Goldman's medical opinion properly under 20 C.F.R. § 404.1520 or ignored medical evidence.  Defendant emphasizes that the ALJ properly assessed the necessary consistency and supportability factors when conducting her analysis of Dr. Goldman's opinion.  Defendant notes that form assessments like Dr. Goldman's have limited probative value because they generally consist of "vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses" that "cite no medical evidence and provide little to no elaboration."  ECF No. 16 (citing *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018)).  Defendant further argues that the record provides ample support for the ALJ's decision, including her assessment of Plaintiff's RFC.  Defendant emphasizes that it is Plaintiff's burden to establish her limitations and contends that Plaintiff has failed to prove additional limitations that were not accounted for by the ALJ.

## Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence in the record.  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).  "[T]he threshold for such evidentiary sufficiency is not high.  Substantial evidence . . . is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).

A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (internal quotation marks and citations omitted).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity that exists in the national economy by reason of a medically determinable impairment that has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).

A special technique is used to determine the severity of mental disorders.  This technique calls for rating the claimant's degree of limitations in four areas of functioning,

6

also known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). To satisfy the "paragraph B" criteria, the claimant's mental impairments must result in one "extreme" or two "marked" limitations in functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. 20 C.F.R. § 404, Subpt. P, App. 1, 12.00(F)(2).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work. If the claimant cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors—age, education, and work experience. *See, Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**Discussion**

Because the Court finds that Plaintiff's second argument—that the ALJ failed to support the RFC's limitations with sufficient medical evidence—warrants remand, it will discuss that argument first. The Court will then briefly address Plaintiff's additional argument regarding the ALJ's discounting of Dr. Goldman's assessment of Plaintiff's mental impairments.

A.   **The ALJ's RFC Evaluation**

A claimant's RFC is defined as "what [the claimant] can still do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). The ALJ must determine a claimant's RFC based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Although the RFC is a medical question and must be supported by some medical evidence, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932.

The ALJ noted that "[i]n making this [RFC] finding, [she] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. 28. She "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." Tr. 28. The ALJ found that "the [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the [Plaintiff]'s statements concerning

8

the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." Tr. 29. She then cites to instances in Plaintiff's medical records supporting the existence of Plaintiff's medically determinable physical impairments, but then cites to other records that she claims reflect the lack of limiting effects of those impairments. Specifically, the ALJ gives significant weight to portions of the record showing that Plaintiff' providers consistently found that Plaintiff had "normal gait and station" and "normal strength, tone, and range of motion in the bilateral upper and lower extremities." Tr. 29–31. The ALJ further notes that "the signs and symptoms do not support the level of severity as alleged by the claimant, especially in light of her working at least part of the time as a caretaker." Tr. 31.

      The ALJ notes that Plaintiff stated in her functional report that she had trouble standing or sitting for long periods because her back hurts if she remains in one position for too long; has trouble lifting more than five pounds; cannot lift any weight over her head; avoids bending over or doing routine chores around the house like washing dishes, cooking, or putting away dishes because of her back pain; has difficulty bathing herself due to pain and limitations in her limb strength; is unable to get off the toilet without assistance; wears a back brace for her ongoing hip and back pain; and experiences ongoing tiredness and dizziness. Tr. 29. Given all of these self-reported symptoms, and Plaintiff's diagnosis with ankylosing spondylitis, bilateral sacroiliitis, and lumbar and thoracic radiculopathy, the Court is skeptical of the ALJ's assessment that Plaintiff can be expected to frequently climb ramps and stairs and frequently stoop, kneel, crouch, and

9

crawl.  The ALJ fails to explain how she factored in Plaintiff's chronic back and hip pain when making such conclusions.  Regardless, the Court need not fully address the adequacy of the ALJ's assessment of these symptoms because it will reverse based on the ALJ's failure to properly account for the limiting effects of Plaintiff's narcolepsy and chronic tiredness as well as failing to adequately consider all of Plaintiff's physical limitations in combination when determining Plaintiff's RFC.

The RFC provides little indication of how the ALJ has taken Plaintiff's narcolepsy and chronic fatigue into account.  True, the ALJ lists narcolepsy as one of Plaintiff's severe impairments.  The ALJ also acknowledges that Plaintiff has ongoing tiredness; a diagnosis of excessive daytime sleepiness; a Multiple Sleep Latency Test was suggestive of narcolepsy but showed no signs of sleep disordered breathing; and that Plaintiff noted increased fatigue with use of a CPAP machine 8–9 hours per night.  But the ALJ does not evaluate the effect Plaintiff's narcolepsy would have on her functional limitations.  Further, the ALJ never indicates whether she considered how Plaintiff's narcolepsy might be exacerbated by her medications, many of which can cause drowsiness.  While the ALJ's RFC analysis limits Plaintiff from ever operating hazardous machinery, it is unclear if that determination was related to Plaintiff's narcolepsy and chronic fatigue or to some other physical or mental symptoms.

This case will be reversed and remanded so the ALJ can provide a fulsome explanation of how Plaintiff's RFC may be affected by her narcolepsy and chronic tiredness caused by her medications.  The ALJ shall also take measures to assess how all of Plaintiff's severe impairments and their associated symptoms, when considered in

combination, support the RFC analysis.

### B. The ALJ's Assessment of the Medical Opinion Evidence

In light of the remand and reevaluation of Plaintiff's RFC, the ALJ shall likewise reassess Plaintiff's mental RFC and the medical opinion evidence, including the opinions of Dr. Goldman.

Under the recently revised regulations, "treating physicians are no longer entitled to special deference." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citation omitted). Rather, the ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). "[T]he first two factors—supportability and consistency—are the most important." *Austin*, 52 F.4th at 728 (citations omitted).

On September 10, 2020, Dr. Goldman completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) in which he determined that Plaintiff had moderate impairment in understanding, remembering, and carrying out simple instructions; marked impairment in her ability to make judgments on simple work-related decisions, to understand and remember complex instructions, and to carry out complex instructions; and extreme impairment in her ability to make judgments on complex work-related decisions. Tr. 1220–21. When asked to identify factors supporting these assessments, Dr. Goldman wrote:

11

> Due to her Major Depressive Disorder, Recurrent, Samantha has days and weeks wherein she is so depressed she has difficulty engaging in activity. The depression adversely impacts her memory and focus, so much so that it adversely impacts her ability to remember and perform even simple commands and tasks.  Her ability to remember and perform complex tasks is greatly disrupted.  Her anxiety disorder makes decision making very difficult.  Due to her Narcolepsy, Samantha has difficulty staying awake throughout the day and is at risk when around any dangerous object or machinery.  Due to her Fibromyalgia, Samantha experiences "Fibro Fog" that adversely impacts her ability to remember even simple commands and to perform tasks.  Samantha deals with chronic pain on a daily basis due to ankylosing spondylitis . . . a rare type of arthritis that causes pain and stiffness in the spine.  This lifelong condition . . . usually starts in the lower back and spreads up to the neck and can damage joints in other parts of the body, including hands and knees.  It can also affect vision; Samantha is being treated by a rheumatologist for this disease.

Tr. 1221.  Dr. Goldman indicated that Plaintiff had a marked impairment in her ability to interact appropriately with the public, to interact appropriately with supervisor(s), and to interact appropriately with co-workers; and extreme impairment in her ability respond appropriately to usual work situations and changes in a routine work setting.  He explained that:

> Due to Samantha's Anxiety and Fibromyalgia, criticism, even when constructive, causes her to become extremely anxious and emotionally distressed.  This exacerbates Samantha's depression, leading to crying episodes and feelings of self-doubt and loss of self esteem [sic].  This adversely affects her ability to interact with others.  Due to the physical pain and recurrent depressive episodes, as well as the recurrent anxiety episodes, Samantha is often homebound.

Tr. 1221.  When asked if any other capabilities are affected by Plaintiff's impairments, he wrote that "Samantha's Fibromyalgia and Ankylosing Spondylitis pain is exacerbated by her episodes of depression.  Samantha's depressive episodes are exacerbated by her chronic pain due to the Fibromyalgia and the Ankylosing Spondylitis."  Tr. 1221.

Dr. Goldman further opined that Plaintiff has good days and bad days. He stated that he would anticipate Plaintiff's impairments and treatment would cause her to be absent from work more than four days per month. He also indicated that Plaintiff's symptoms are severe enough to interfere with her attention and concentration needed to perform simple work tasks such that she would likely be "off task" for 25% or more of a typical workday. He stated that Plaintiff would likely need to take an unscheduled 30-minute break once every hour during a typical workday on account of anxiety, crying spells, narcoleptic sleep episodes, and pain. Tr. 1222.

Dr. Goldman's opinions generally align with Plaintiff's own subjective assessment of her mental impairments, which are noted in the Functional Report Plaintiff completed on her own behalf on October 8, 2019. Relevant to her mental limitations, Plaintiff describes experiencing anxiety every day, three to five times a day, which she claims makes her unable to handle small, simple tasks. She describes spending 75% of the day on the couch dealing with her pain and anxiety. She states that two days out of the week, her ex-fiancé would take over the care of her children[4] in the mornings before school because of her anxiety. She describes setting a daily alarm on her phone to remind herself to take her medications. She states that there are days when she performs no activities due to her anxiety. She says that she drives but sometimes has others drive her around when her anxiety is too overwhelming. She describes watching television almost

---

[4]  Plaintiff has a daughter, who was six years old at the time of the October 26, 2020, hearing, and for whom Plaintiff is the primary caregiver. When Plaintiff was still with her ex-fiancé, i.e., after the alleged onset of her disability, Plaintiff also helped to care for her ex-fiancé's two children.

all day, every day to distract her from her anxiety.  She denies needing to be reminded to go to her weekly counseling or monthly therapy sessions.  She says that she gets snappy and frustrated with friends and family when her anxiety is high.  She checked boxes indicating that her conditions affect her concentration and her ability to get along with others but did not check boxes saying that her conditions affect her memory or her ability to complete tasks.  She states that she can follow written and spoken instructions "about halfway" and tries to avoid authority figures.  She claims to have been fired from her job at Clarity Healthcare because of her difficulty communicating with co-workers and patients.  She states that she can handle one or two changes in her routine, but any additional changes stress her out.  Tr. 461–68.

      Dr. Goldman's assessment and Plaintiff's personal assessment of her mental health limitations are in stark contrast to the assessment provided by the Commissioner's consulting medical expert, Dr. Carver.  Dr. Carver noted in his April 5, 2021, responses to the ALJ's interrogatories that he believed that "[t]he medical record supports a diagnosis of major depressive disorder[,] but the severity is difficult to determine."  Similarly, he stated that Plaintiff "would seem to have a mild to moderate chronic level of anxiety with symptoms such as restlessness, fatigue, difficulty concentrating, irritability, and sleep disturbance."  Tr. 1357.  He concluded that Plaintiff's ability to understand, remember, or apply information is mildly impaired by her intrusive anxiety and physical symptoms, but notes that she could "easily work with simple and detailed instructions . . . ." especially because she has completed at least four years of college and has an associate's degree in business administration.  Dr. Carver also determined that

14

some of Plaintiff's personality features "might be considered indicative of borderline personality disorder," which he noted moderately impairs her ability to interact with others. He further stated that Plaintiff is moderately impaired in her ability to concentrate, persist, and maintain pace due to the side effects of some of her medications, though he also states that she "retains the concentration and attention necessary for routine repetitive activity. . . ." Finally, Dr. Carver found that Plaintiff's ability to adapt and manage herself is at least mildly impaired, yet he noted that she has lived independently, has been employed in full-time positions, has a driver's license, and has managed her own money. Tr. 1358.

Although the RFC's mental limitations are arguably supported by substantial evidence on the record, the Court is not entirely convinced that the ALJ appropriately discounted Dr. Goldman's assessment of Plaintiff's mental impairments. Here, the ALJ concluded that the extreme and marked mental limitations set forth in the Dr. Goldman's assessment were not persuasive, but the ALJ's explanation lacks specificity regarding how Dr. Goldman's assessment is contradicted by medical evidence. While the ALJ and Dr. Carver both cite to evidence supporting less severe limitations than those advanced by Dr. Goldman, such as Plaintiff thoroughly cleaning her apartment or planning social outings with her neighbors, the ALJ fails to cite to significant medical evidence supporting her skepticism of Dr. Goldman's assessment.

Upon remand, the ALJ may wish to reexamine and reevaluate the current evidentiary record, including Dr. Goldman's opinion and other medical evidence regarding Plaintiff's mental limitations. Although the ALJ may still ultimately conclude

15

that Plaintiff is not disabled, before doing so, the ALJ should evaluate whether the medical evidence supports Dr. Goldman's assessment of Plaintiff's mental limitations.  In doing so, the ALJ should take care to consider the exacerbating effect Plaintiff's chronic pain has on Plaintiff's depression and anxiety and vice versa, as the ALJ does not appear to have evaluated this portion of Dr. Goldman's assessment.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner to deny benefits is **REVERSED** and the action is **REMANDED** for further proceedings consistent with the above.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 1st day of March, 2024.

_____<br>
AUDREY G. FLEISSIG<br>
UNITED STATES DISTRICT JUDGE